IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN THE MATTER OF THE EXTRADITION OF )
) NO. 15-mj-3060
SILVANO MARTINEZ MARTINEZ )

**O R D E R**

Pending is the Motion to Dismiss Complaint and, in the Alternative, for Discovery (the "Motion") [Docket Entry No. ("DE") 14] filed by Silvano Martinez-Martinez.[1] A hearing was held on January 12, 2016. *See* DE 28.[2] During the January 12 hearing, the Court ruled on the request for discovery, and a separate order was later entered. *See* DE 37. Additionally, the Court's ruling on the request for discovery is supplemented below. For the reasons stated below, the Motion is DENIED in part (as to the requested dismissal of the Complaint) and GRANTED in part (as to the request for discovery).

This proceeding was commenced by a Complaint for Provisional Arrest with a View Towards Extradition (18 U.S.C. § 3184) (the "Complaint") [DE 3] filed by the United States government (the "Government"). The Complaint essentially alleged that there is an Extradition Treaty between the United States and Mexico that provides for the provisional arrest of alleged fugitives. *Id*. at 1 *citing* 31 U.S.T. 5059; TIAS 9656. *See also* 1980 WL 309106 (Extradition

---

[1] Also pending is the Motion for Release on Bail [DE 19] filed by Mr. Martinez. The Government filed a response opposing both motions [DE 20]. A separate order on the Motion for Release on Bail will be entered.

[2] At the January 12 hearing, evidence was submitted and argument made with respect to all pending requests for relief by Mr. Martinez, namely, for dismissal of the Government's complaint, for discovery, and for his release on bail.

Treaty Between the United States of America and the United Mexican States (the "Treaty"). The government of Mexico asked the United States, through diplomatic channels, for the provisional arrest of Mr. Martinez for the purpose of extradition.[3] According to the allegations in the Complaint, Mr. Martinez was charged with two counts of aggravated homicide in 2013 in Mexico. The Complaint further alleged that one eye witness saw Mr. Martinez shoot and kill two people in Mexico on July 21, 2013, and another witness heard gunshots, saw Mr. Martinez and another individual running and shooting their firearms, and saw the homicide victims lying on the ground. Mr. Martinez was believed to be located in Nashville, Tennessee, within the Middle District of Tennessee.

The Complaint states in relevant part as follows:

> WHEREFORE, the undersigned complainant requests that a warrant for the arrest of SILVANO MARTINEZ be issued in accordance with 18 U.S.C. § 3184 and the Treaty; and that, upon such hearing as is required by federal law, if the Court deems the evidence sufficient under the provisions of the Treaty to sustain the charges for which extradition is sought, the Court certify the same to the Secretary of State in order that a warrant may be issued for the surrender of SILVANO MARTINEZ to the appropriate authorities of Mexico.

*Id.* at 4. The Complaint was signed under penalty of perjury by an Assistant United States Attorney, who was stated to be acting for and on behalf of the government of Mexico. *Id.* at 1.[4]

---

[3] The Diplomatic Note [from the Mexican government] Requesting Provisional Arrest was not appended to the Complaint, but was later filed by the Government. *See* DE 23.

[4] Section 3184 of Title 18 requires that the complaint be made "under oath". *See* 28 U.S.C. § 1746.

The issuance of a warrant for the provisional arrest of Mr. Martinez was ordered by a U.S. Magistrate Judge in this District [DE 5]. Mr. Martinez was arrested on December 23, 2015 [DE 6], and appeared before the undersigned Magistrate Judge [DE 7].

Mr. Martinez filed a Motion to Dismiss the Complaint, or in the Alternative for Discovery [DE 14] and a Motion for Bail [DE 19]. A hearing was held on January 12, 2016, on the pending motions.[5] In open court on January 12, the Court granted Mr. Martinez's request for discovery and ordered the Government to produce certain information by January 29, 2016. *See* DE 28 at 62-62, 64-66, and 73-77. The Government subsequently moved to extend the time to provide discovery [DE 33], and the Court allowed the Government until February 5, 2016 to produce the required information [DE 37].

As noted by the Court during the January 12 hearing, the question of the scope of discovery in this proceeding is controlled by the standards articulated by the Sixth Circuit in *In re Extradition of Drayer*, 190 F.3d 410, 414-15 (6th Cir. 1999), and to some extent by the earlier *Demjanjuk v. Petrovsky* case, in which the Sixth Circuit held that in an appropriate case the holding of *Brady v. Maryland*, 373 U.S. 83 (1963), applies to discovery requests for exculpatory evidence made by the target of an extradition proceeding. *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993). In *Drayer*, the Sixth Circuit expressly clarified that not every target of an extradition proceeding is entitled to the broad scope of discovery permitted in *Demjanjuk*. *In re Extradition of Drayer*, 190 F.3d at 414. In *Demjanjuk*, the United States had conducted its own investigation of the offense underlying the extradition request, which will not necessarily happen in every extradition proceeding. *Id*.

---

[5] The hearing was originally scheduled for January 7, 2016 [DE10], and was continued to January 12, 2016, at the request of the Government without opposition by Mr. Martinez [DE 11]. *See* DE 13.

Here, it appears that some preliminary investigation may have been conducted when Mr. Martinez was detained by U.S. Customs and Border Protection in Laredo, Texas, upon his return from Mexico in July 2013. DE 22-3 and DE 28 at 25-26, 34, and 38-41. It further appears that there may have been some period of time during which Mr. Martinez followed up with the United States' authorities. DE 38-41. Based on this information, the Court finds that the discovery requested by Mr. Martinez, namely any records of his detention in Laredo, Texas, including any follow-up, are appropriately within the scope of *Drayer*, and therefore discoverable. For that reason, the Government was ordered by the Court during the January 12 hearing to produce the requested information, and a subsequent order was entered. DE 37.

The primary relief requested by Mr. Martinez in his Motion is dismissal of the Complaint because there is no "urgency" justifying use of the provisional arrest mechanism. Mr. Martinez argues that due process compels a prompt judicial determination as to whether there is a *bona fide* urgency. He further argues that no *bona fide* urgency exists and the provisional arrest warrant is therefore invalid, thus warranting dismissal.[6]

---

[6] In his Motion, Mr. Martinez also stated as grounds for dismissal that the Complaint did not show there was "an undertaking to formalize the request for extradition". DE at 6. That basis was not briefed in any substance nor argued in any substance at the January 12 hearing. Nevertheless, the Court finds this argument unavailing, as nothing in the plain language of the Treaty requires "an undertaking to formalize the request for extradition." The relevant provision of Article 11 of the Treaty states:

> 3. – Provisional arrest shall be terminated if, within a period of 60 days after apprehension of the person claimed, the executive authority of the requested Party has not received the formal request for extradition and the documents mentioned in Article 10.

Thus, Article 11 merely provides what may happen if the formal request for extradition and other documents mentioned in Article 10 are not received by the Government within 60 days after the apprehension of Mr. Martinez.

The Government argues that the determination of urgency is non-justiciable. That position has some support in case law. *See e.g. In re Extradition of Garcia*, 615 F.Supp.2d 162, 174-75 (S.D. N.Y. 2009) (discussing justiciability of urgency determination). This Court, however, finds the better approach to be that of the Second Circuit that, "while the interpretation of a treaty is a question of law for the courts, given the nature of the document and the unique relationship it implicates, the Executive Branch's interpretation of a treaty is entitled to great weight." *Swarna v. Al-Awadi*, 622 F.3d 123, 133 (2nd Cir. 2010) *quoting Abbott v. Abbott*, 560 U.S. 1, 130 S.Ct. 1983, 1993 (2010).

This is especially so because the determination of "urgency" is not merely temporal, as ordinary parlance and Mr. Martinez suggest.[7] Rather, the question of urgency in the context of a treaty involves other considerations, including the importance of the matter to the country seeking extradition and foreign policy concerns of the United States. *U.S. v. Leitner*, 874 F.2d 159, 161 (2nd Cir. 1986). This "broader interpretation of the term that takes into account the interest of the treaty parties seems the appropriate one." *Id. See also Matter of Extradition of Russell*, 805 F.2d 1215, 1218 (5th Cir. 1986) (question of "urgency" turns on the perceptions of the requesting and the requested countries) and *United States v. Messina*, 566 F.Supp. 740, 745 (E.D. N.Y. 1983) (determination of urgency "is due deference as a matter of comity … and …

---

[7] In fact, courts have upheld extradition when the alleged crime was separated from the extradition proceeding by much longer periods of time than in this case. *See e.g. In re Extradition of Drayer*, 190 F.3d at 415 (14-year delay) and *Martin v. Warden*, 993 F.2d 824 (11th Cir. 1993) (17-year delay). While these cases dealt with the extradition proceeding itself, and not a provisional arrest, Mr. Martinez has not cited a single case in which a court has dismissed an extradition complaint on urgency grounds.

considerable weight [attaches] to the judgment of the United States, given its foreign affairs interest in the matter").[8]

The Court reaches this conclusion after affording Mr. Martinez the constitutional procedural safeguard to which he claims to be entitled, namely, a full hearing and opportunity to challenge the urgency determination made by the Mexican Government and the United States Government. *See* DE at 8-9.[9] The Court declines to decide whether the Due Process

---

[8] Mr. Martinez argues that the "urgency" is a perfunctory statement, which must therefore be pretextual. *See* DE 28 at 80 and 96-99. Mr. Martinez relies primarily on another extradition case in this District in which the Mexican government also sought a provisional arrest for similar reasons. *Id*. The Court finds Mr. Martinez's argument unpersuasive. First, the Court cannot find that the stated reason for urgency in this case is wholly inconsistent with the evidence presented. The Court construes the import of the Diplomatic Note to be that the Mexican government had located where it believed Mr. Martinez to be and was afraid he might move and his whereabouts become unknown. The Court cannot find that reason is perfunctory or pretextual. While Mr. Martinez may have given his address to U.S. border officials, there was no proof that information was provided to the Mexican government. In fact, the address in the Diplomatic Note was a previous address of Mr. Martinez, which further supports that the Mexican government was not entirely certain of Mr. Martinez's whereabouts. Further, even if the Court was inclined to accept Mr. Martinez's argument that the stated urgency is simply perfunctory (which it is not), the Court cannot find, without more proof, that two cases are so statistically significant as to warrant departure from the considerable deference otherwise afforded to the Executive Branch's interpretation of the extradition treaty with Mexico.

[9] Mr. Martinez contends that, as an American citizen, he is entitled to the protection of the Due Process Clause against arbitrary government action. *See* DE 14 at 7. The Court notes that the Complaint alleges that Mr. Martinez is a Mexican citizen. *See* DE 3 at ¶ 9. That allegation is untrue. Mr. Martinez is a naturalized United States citizen, a fact that was easily verifiable by the Government. *See* DE 16 at 4 (the Court observed Mr. Martinez in court and he is plainly the person in the photograph on the Certificate of Naturalization). That fact tends to support Mr. Martinez's argument that the Government failed to independently verify the information provided by the Mexican Government, including, perhaps, the claim of urgency, and this Court should therefore give little weight to the urgency determination. The Court is concerned that the Government apparently made no effort to confirm Mr. Martinez's citizenship status and filed a sworn complaint with a plainly untrue allegation. However, that concern, standing alone, is not a basis for the Court to disregard the considerable deference properly afforded to the judgment of the Government in foreign policy matters, including extradition treaties.

Clause universally applies in extradition actions; it is enough that Mr. Martinez received a prompt and full hearing in this case.

For the foregoing reasons, the Court concludes that dismissal of the Complaint is not warranted and that request is therefore DENIED. Mr. Martinez's request for discovery is GRANTED, as provided by separate order [DE 37].

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge